The issue before the court is whether or not statutory rape, first issue, is a crime of violence under 2K2.1 which is the gun guideline of the sentencing guidelines. Our position is that it should not be considered a crime of violence despite a recent 9th Circuit decision in Granboy. And I'm assuming that Your Honors have received our 28-J letter referring to that case. It didn't help you too much, did it? No. Thanks for calling it to our attention. That's the mark of a good officer of the court, to call a case that's of your attention. Thank you, Your Honor. It does not, on its face, appear to help our position. I didn't get the letter, so why don't you tell me about that case? Granboy is a case that purported to deal with whether or not a sexual offense involving a minor is a crime of violence under the very guideline at issue in this case, that is the gun guideline. And let me say at the outset, because I think this is critical to an accurate determination of the issue, there is case law that develops what a crime of violence is under the gun guideline, that is 2K2.1, and there is also case law that develops what is a crime of violence under the illegal reentry guideline, which is 201.2. And this distinction is critical because what has happened in the evolution of the case law is that these issues and these analyses have been fused impermissibly. Granboy dealt with a state statute, I believe, and I think in actuality the victim in that case was quite young, but it was not a matter of record and the court employed a categorical approach. But what Granboy did was spin off on an analysis of 2L1.2, the illegal reentry guideline, to determine whether or not the sexual abuse of a minor conviction was a crime of violence under the gun guideline. And in so doing, completely failed to consider the United States Supreme Court case of Stinson v. United States, which should be considered by this Court to be binding precedent. And we suggest that Granboy can be viewed as not controlling because it does not acknowledge and apply Stinson v. United States in the way that it should. Your suggestion, if I understand your argument, that Granboy was wrongly decided. It was. And it was that the only people that can make that decision is an in-bank court. As a panel, we have to apply Granboy. So that it's wrongly decided is not going to help your case at this stage, maybe on a petition for rehearing in-bank. But how would you distinguish, Granboy, assuming it is, in spite of your argument, a case we'll have to apply? How would you distinguish it? Well, I would say that it does not apply the proper guideline. And that's really what Stinson is all about. Stinson says you look to the commentary as authoritative on the guideline at issue. But you're still arguing that it's incorrect, which our panel can't do anything much with. We have to follow it unless it's distinguishable on its facts. And then, you know, we can follow it, and you can argue on a petition for rehearing in-bank that the Court should, in-bank, overrule it. But unless you can distinguish the case, tell us why even accepting it as good law, it doesn't apply here. This three-judge panel stuck with it. Certainly, that is the one thing that the Court can consider doing, is determining the matter in-bank. But I would suggest- We can't decide that. Just to refresh you on our procedures, we just have to follow the Ninth Circuit precedent. If we do, and a party doesn't like it, they can file a petition for rehearing in-bank. At that point, if any judge on the Court wants a vote about whether it should be heard in-bank, they request a vote. And then there's the vote of the active judges. And a majority of the active judges who are not recused, if any recuse, a majority of the active judges have to vote for it to be heard in-bank. So that's the procedure. At that point, they'd ask for more briefing. But if, for whatever reason, a majority of the judges didn't want to vote, or a majority didn't vote for it to be in-bank, that's the end of it with us. I also think, however, that this Court can look at Granboy and make a determination that it need not be bound, because Granboy did not use and apply controlling Supreme Court precedent. And under Texas- We can't do that. We're not allowed to do that. I'm sorry. I'm afraid. At least I think we're not allowed. Judge Wallace has been on this longer than I have, so he could advise if we can. I think that's one that you don't want to use up your time on. But let me push you to another area. The District Court judge took a look at it and said, I can read the tea leaves of the Ninth Circuit, and I know where they're heading. And this is the place they're heading. Now, I want to talk about one of those tea leaves, and that's the Wood case. It deals with something different. Yes. But it certainly is consistent with the position that was taken by the District Court in this case of arguing for a per se application. How would you distinguish? I know you can distinguish Wood from the facts of the case, because it dealt with a different type of crime. But the theory of Wood, how would we write an opinion without interfering with the theory of Wood? Well, Wood is a proper analysis of 2K2.1. It looks at the language, the specific language of the guideline, and determines whether or not that prior crime by its nature presented a serious potential risk of physical injury to another. Now, that is exactly the focus. Wood and Melton are the two main cases that deal with that issue in the Ninth Circuit. Wood said, we have a circumstance here where there's a sexual abuse of a minor involving a 4-year-old child. And we believe that implicit in the size, differential in size, between these two people, age and authority position of the adult, that this crime inherently by its nature presents that serious potential risk of physical injury. That is a legitimate and a decent holding. And there are many cases across the country that follow that, and they analyze it properly. Why is this the same? Because this victim was 15 years old, and there was not the differential in size, age, and position of authority of the adult. Was it 21 versus 15? Pardon me? Was it age 21 versus age 15? My client had turned 21 two months before. Let me ask you a question. We're doing this determinations under Taylor where we can't go to the facts of the case. So if we have to measure the size of the people, if we have to measure their age, then we'll have the psychologist coming in. Is it really a 15-year-old or is it a 12-year-old mentally? It seems to me that that argument's leading us away from Taylor. Why can't we just say per se? A person by statute, we have said, cannot give consent, and so it is a rape. And what could happen in the rape? Well, she may change her mind and get bloodied. She may get pregnant, which both of these women did that were cited, and have to go through an abortion. That that is physically as well as mentally traumatic and may last for years. And there is the sexual disease and there's AIDS, et cetera. Why can't we say that per se, a person who is being protected by the state because of their youth per se may well have these issues the same as we did under Woods? Because it's not a place for the court to say that. It should be said by the legislature or the Sentencing Commission, just as it was in the Illegal Reentry Guideline. The Sentencing Commission created a per se crime of violence, even though no force was involved. No, I don't want you going to statute. I understand your argument there. How is it different from Woods where we actually created the per se application? Courts have to look at this language and apply it by its nature. Does it create a serious potential risk of injury? Yeah. And a per se rule, it basically ignores the language. It says for all time and eternity in every single case, we're going to find that any non-injury-risking consensual sexual conduct creates a serious potential risk of physical injury. If, in fact, that is what the direction that this statute or this guideline should be taking, then it's the place of the legislature and the Sentencing Commission to direct it there. There are courts, Shannon is one of them, that I've talked about in my brief. It's a difficult issue. It's a very difficult issue. It is. But lines have to be drawn. Precisely. And the question is, should the line be drawn there as we did in Woods, or should it be drawn elsewhere? And I think you have to look to the commentary, and that's where Stinson comes in. Yeah. Of the guideline. That's a good argument. Thank you very much. May it please the Court of Counsel. Fred Winehouse, Assistant U.S. Attorney. Judge Wallace, the Court has said that statutory rape per se is a crime of violence, and that occurred on July 22nd in the Cranbois case. It stated, our opinion is guided by the Court's decision in United States v. Pierres-Salmeron, which explained that crimes involving the sexual abuse of a minor are per se crimes of violence. So that's the law of the circuit. Statutory rape is clearly a crime of violence because of the serious potential risk of physical injury to another. After Woods, this Court published the Riley decision, in which the Court concluded that the simple rape statute from Louisiana was a crime of violence. That required the victim to be incapable of consent by intoxication or mental deficiency or some type of deception. And the Court concluded the risk of injury was perhaps an unwanted pregnancy or sexually transmitted disease, which is exactly what occurred in this case, an unwanted pregnancy. Is it your position that a pregnancy is an injury? Yes, an unwanted pregnancy. And your authority for that under the guidelines? It's just the Riley decision, the decision from this Court, where an unwanted pregnancy or a sexually transmitted disease was articulated that those are injuries. So the line of cases, there are six cases that I cited in the brief. They crystallized on July 22nd where the Court said conviction such as this is per se a crime of violence. I'd like to move on to the issue of consolidation. Assuming you agree that this is a crime of violence, counsel indicates that the result should be the same because that is related to the conviction the defendant had for a delivery of a controlled substance. And these two convictions occurred in Union County there, Convictions 32 and 33 in the pre-sentence report. It's our position that they're not related because of the way the state court judge sentenced them. He gave an upward departure to the defendant based on the harm in the statutory rape case. There was no formal consolidation order. The cases kept their same case numbers. There was a consecutive sentence with an upward departure. I think the cases indicate that you have to look at the intent of the state court judge to determine whether or not they're related. And if you do that, I think it's clear that they're not related. Even if they are, it's kind of a visual argument. You actually have to line up these three convictions and look at them. Even if they are, the rape conviction and the DCS conviction from Union County, these are convictions 32 and 33, if they're related, then the rape conviction is still not related to conviction 31, which is a delivery conviction from Baker County. It's a subset. You have to determine if the Baker County delivery conviction is in any way related to the consolidated convictions from Union County. So is conviction 31 related to 32 and consolidated 33? And under 4A1.2, application note 3, the issue is did these occur on the same occasion? And the answer is no, they did not. The Baker County and marijuana conviction is simply not related, did not occur on the same occasion as the consolidated rape 3 Union County delivery conviction. Those two offenses don't arise out of the same facts, correct? They didn't occur at the same time. The rape 3 and the, that's correct, they're completely different. But the two narcotics convictions are related. Those are. My point is that the Baker County delivery conviction 31 is not related to the rape 3 conviction. They occurred on different occasions. They were not consolidated. And finally, you have to determine if there was a single common scheme or plan. And certainly not. There was no relationship with a Baker County drug conviction and a Union County statutory rape. So actually, it's better to visualize these with concentric circles to determine if they're related. Although 32 and 33 may be related because they occurred in the same courthouse, same judge, conviction 31, the delivery conviction from Baker County can simply not be determined to be related to the rape 3 conviction. Thank you. We don't go away yet. In the 28-J letter submitted by your adversary, she suggests that we need to await likely. And I wanted to get your position on that. Well, that was. This is a fast moving year. That was determined on Monday by this court in the. I think it's Quintana. Quintana. I have it here. The Castro case was another. No, it's not. Valdez. Camacho. Montana. Montana. On Monday, Judge Nelson, Gibson and Graver concluded that Blakely had no effect on the determination of the quality of a prior conviction. OK. I had thought that we would be going that direction. But I understand Blakely doesn't. It doesn't affect the exception recognized by the Supreme Court and Apprendi for judicial findings regarding a prior conviction. Back to the prior conviction. Correct. That's what I thought. This court on Monday said that. And the panel was. Is that Nelson T.G. or Nelson? Dorothy. Dorothy Nelson. Judge Gibson and Judge Graver. Thank you. You say you remain up to date on that. That's very helpful. Why? We have good counsel on this case. So it has no effect on the quality of the prior conviction. I mean, the determination of if it's a crime of violence, the base offense level. It has no no effect on the evaluation of a prior conviction to determine whether it's a crime of violence. Thank you. Let me ask this. Would it be beneficial to permit supplemental briefing in this case on the Blakely issue in light of that case or any other issue? I don't think so because it's so clear from the opinion on Monday that it doesn't affect the base offense level. The only issue here is rate three of crime of violence. That was answered on July 22nd. And then whether or not the cases are consolidated. Nevertheless. I think we will add two or three minutes. We'll give you three minutes so you can say what you want. Thank you very much. With respect back to the crime of violence issue, I just simply would like to call to the court's attention one of the couple reasons why I think this issue is particularly difficult and should be spoken to by the legislature and sentencing commission. In the state of Oregon, a 15-year-old is entitled to make decisions, medical decisions, for herself and herself. And as well, youngsters at that age, 15 years old, are often charged as adults in the criminal system under Measure 11 offenses. And these ways of treating 15-year-olds as adults capable of making their own decisions. As far as a sexual encounter, Schmidt was not legally able to consent to that touching. That's correct. In that sense. It was a rape. Would that make it a statutory rape? Does that make it a physical injury? Your Honor, I would suggest it does. If you have the capacity to make a medical decision for yourself to avoid pregnancy, to deal with pregnancy or what have you, then pregnancy itself and the potential for STDs in pregnancy is not the type of thing that is meant to be protected by the statute, the statutory rape. You're not suggesting the statutory rape statute is unconstitutional because of the abortion cases, are you? No. I'm simply indicating that I think that looking at all of the laws that deal with that age range of a person shed light on what the purpose of the statute is. It clearly is a statute that proscribes that conduct. It's immoral. It's wrong. But that it creates a crime of violence or implicit in that is that we're protecting from injury is not a warranted conclusion. Counsel, your adversary's counsel reminded me of a question I'd like to ask you, and that deals with the Riley case where there was a simple rape involved. And Judge Hawkins' opinion for our court appears to talk about potential risks. That is, it doesn't have to be a physical injury if there's a potential risk. And if that's true, doesn't that cut against your argument that this should be a per se violation here as we held it would? Riley dealt with the potential for risk in a context where the victim was arguably unconscious and comes to consciousness and a confrontation is provoked. Riley specifically said, we do not reach the question of whether or not statutory rape is a crime of violence. He does not provide authority for the government in that regard. He says while every episode of simple rape may not result in physical injury to the victim, the guideline only requires that there be a serious potential risk of physical injury, not that the injury in fact occurred. There's a potential risk of statutory rape occurring with pregnancy, AIDS, et cetera, et cetera, et cetera. Isn't that sufficient under Riley? Riley dealt with an underlying crime that was punishing the situation where the victim is unconscious or unaware of the perpetrator's acts against her. Okay. We have a similar situation here where the person by statute cannot give their consent. They are consenting in actuality. Physically they're consenting. Sure. That's true. That's true. But we say they can't give their consent. The statute says it's impossible for them to consent. So it becomes a rape. We get back to the issue of what is that potential risk for injury. That's the core analysis. Right. And Riley says the potential risk for injury is the confrontation over taking advantage of somebody in an unconscious state. Counsel, I have some problem with this statute. Is a serious potential risk of injury any different from a risk of injury? Do we have to have a statistical determination that a serious potential risk means more likely than not to create an injury? Well, I don't know that we have to have statistical information, but I think your question points up why the issue is so difficult. And the Shannon case that I've cited goes into a full analysis of that very question. How do we at what point do we say at what age level is it injury risking? And what does that mean? What level of injury do we need? And basically the courts that have tried to even penetrate that issue so far have said we are not going to create a per se rule here. We're going to leave this determination to the legislature. We can't do it. And there have been a couple of cases in other states that said we can't. We didn't do that in Wood. Let me ask you, you've gauged the Riley case as one that only has to do with physical injury, confrontation. But in Riley we specifically said further rape also subjects the victim to the physical risks associated with sexually transmitted diseases and pregnancy. Isn't it just contrary to what you were trying to limit Riley to? My read of Riley is that it was dealing with an underlying offense that dealt with a different factual context. But on that direct issue of ipso facto, a consensual intercourse, meaning injury in terms of pregnancy and STDs, I don't think you can draw that conclusion. I mean in the ordinary course of intercourse, consenting intercourse, pregnancy is not necessarily a result. STDs are not necessarily a result. It's potential. It's potential only. And that's precisely what they said in Riley. Potential is what we looked at. But serious potential. And I suppose that gets back to what ‑‑ And if you're going to say that it has a serious potential of SDT transmission, intercourse does, is there some requirement of showing that the actor, the defendant in the case, had knowledge or reason to know that he was a transmitter of SDT? Or is there no mens rea requirement at all? Certainly I would argue there isn't mens rea required. There would be something. I mean, suppose he had just come out of a physical examination in which he had been given a perfectly clean slate and didn't do another thing but go from the doctor's office to a place of the tryst, right? And he was sure that he was not going to give any SDT to his victim. Is there a serious potential risk of sexually transmitted disease? I would suggest that there's not. I mean, but that's certainly another layer that I think supports the argument that this should be handled by the legislature. But that layer deals with facts, right? And then you get into the trauma table. I think that they would need to take evidence on these things, and just the way everything else is developed through the legislature. I did not say anything about the related cases. May I say one additional thing? We're almost five minutes over time right now. May I just one? Go ahead. Thank you. I will say that the related cases concept certainly would resolve this issue. It should not. These cases were related, the rape three and the marijuana case, in every regard, and I've articulated why in my brief. If they had been prosecuted all in one county, they would have absolutely been related. And the fact that the coincidence of geography takes them an hour apart, different cities relatively close to one another, should not prohibit a finding that they are related. The guidelines do not speak to this issue, and the rule of lenity ought to kick in where there's an issue. Thank you. Thank you. All right. Case is submitted. Thank you. This clerk for this session stands adjourned.
judges: Wallace, Gould, Bea